MARY E. NEUMAN, as Executrix of STEPHEN F. NEUMAN, Deceased, Respondent, *v.* UNION RAILWAY COMPANY OF NEW YORK CITY, Appellant.

Negligence — railroads — action to recover for death of plaintiff's intestate through being struck by street railway car — contributory negligence of deceased — when negligence of railway may not be predicated solely on facts that car was running fast and no warning was sounded.

1. In an action to recover for the death of plaintiff's intestate, through his being struck by one of defendant's trolley cars, where a fair inference from the evidence is that the intestate, who, owing to snow banks in the street, had stopped his automobile on the northbound track of defendant's railway, in getting down from his truck either because he was moving backwards, or otherwise, failed to see the approaching trolley car on the adjacent track until it was within a few feet of him and then when it was too late attempted to escape from his position of danger by climbing back on the truck, he

was chargeable with contributory negligence. If he backed down upon the track in front of the car without looking he was oblivious of his duties. If he looked and saw and still placed himself in a position of danger he was, if anything, still more oblivious because then intention took the place of inadvertence.

2. Another theory, that decedent had started to cross, and when he saw the car coming at a fast rate of speed and not slowing up, made a frantic effort to get back on the truck, also clearly subjects him to the charge of contributory negligence, because even though the street conditions might subject the defendant to additional obligations of caution in some situations there is nothing which changed the rule as between it and a foot passenger who, with free and unimpeded movements, proposed to cross one of its tracks in the middle of a block. The rights of such a person are subordinate to the rights of the car and do not permit him to gamble with the chance of accidents by going in front of a rapidly approaching car.

3. In any event, under the circumstances, negligence on the part of defendant may not be predicated solely on the facts that the car was running at a rapid rate of speed and that no gong was sounded. Daylight made the car easily if not inevitably visible to intestate if he looked before going upon the track and, therefore, a gong was not necessary. The car was going at the rate of twenty miles an hour but this was between street intersections, in violation of no ordinance and left the car under ready and quick control, for the evidence is that it was stopped in its own length after the accident. There is no rule which called upon the motorman to anticipate unusual or careless movements upon the part of a foot passenger who was in full control of his movements until something happened which reasonably led to such anticipation, and there is no suggestion that the motorman did not do everything that he could to bring his car to a stop when the signal of danger was given by the impending accident.

*Neuman* v. *Union Railway Co.*, 215 App. Div. 765, reversed.

(Argued May 13, 1926; decided July 9, 1926.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 24, 1925, affirming a judgment in favor of plaintiff entered upon a verdict.

*Alfred T. Davison, Addison B. Scoville* and *A. C. Mayo* for appellant. The plaintiff failed to prove any negligence on the part of the defendant, and the complaint

should have been dismissed. (*Byrnes* v. *Brooklyn Heights R. R. Co.*, 148 App. Div. 794; *Bittner* v. *Crosstown Ry. Co.*, 153 N. Y. 76; *Reid Ice Cream Co.* v. *New York City Ry. Co.*, 97 App. Div. 303; *Fullerton* v. *Met. St. Ry. Co.*, 37 App. Div. 386; *Goldstein* v. *Union Ry. Co.*, 180 App. Div. 417; 230 N. Y. 570; *Barney* v. *Met. St. Ry. Co.*, 94 App. Div. 388; *Jackson* v. *Union Ry. Co.*, 77 App. Div. 161; *Albrecht* v. *Rochester, S. & E. R. R. Co.*, 205 N. Y. 230.) The plaintiff's intestate was guilty of contributory negligence as matter of law. (*Sackheim* v. *Pigueron,* 215 N. Y. 62; *Goldstein* v. *Union Ry. Co.*, 180 App. Div. 417; 230 N. Y. 570; *Cavo* v. *Kalbach,* 186 App. Div. 728; *Zenner* v. *Brooklyn Heights R. R. Co.*, 173 App. Div. 194; 225 N. Y. 710.)

*Thomas J. O' Neill* and *Leonard F. Fish* for respondent. The defendant has failed to establish any contributory negligence upon the part of the deceased but on the contrary the evidence affirmatively establishes freedom from contributory negligence. (*Kettle* v. *Turl,* 162 N. Y. 266; *Copeland* v. *Met. St. Ry. Co.*, 67 App. Div. 443.)

Hiscock, Ch. J.    This action was brought to recover damages caused by the death of plaintiff's husband and intestate and which, it is claimed, was the result of the negligent conduct of defendant in hitting him with one of its trolley cars.    The intestate was engaged in the business of supplying towels to barber shops.    The routine of his business was to deliver fresh towels to such a shop and take up the soiled ones and have them laundered and repeat this operation from time to time and for the purposes of his business he used a covered automobile.    At the time of the accident, which happened in the daytime, the defendant was operating a double-track railroad in Boston road in the borough of The Bronx and which ran substantially north and south. Intestate desired to deliver some towels at a shop situated

between street intersections on the west side of Boston road and, as there had been heavy falls of snow resulting in banks on each side of the street between the railroad tracks and the curb it was justifiable for him to use the space occupied by the tracks for approach to the place of business of his customer and he traveled north on the north-bound track until he reached a point opposite the desired location and there stopped his automobile astride the west rail. At this moment there was approaching a south-bound car going, according to plaintiff's evidence, at the rate of twenty miles an hour and giving no signals and which in some manner struck the intestate and caused his death. The only one of plaintiff's witnesses who claims to have seen the accident was a discharged employee of defendant's and his evidence constantly shifts in its attempts to describe the movements of intestate immediately preceding the accident. His first statement was to the effect that as the trolley car passed him he looked to the south and " seen a truck standing there on the north-bound track. I also seen a man moving fast and trying to get out of his — front seat of his truck." Upon the inaccurate statement of plaintiff's counsel that he had not so testified the court struck out this evidence and allowed the witness to begin again. His evidence then became to the effect in substance that he saw the intestate starting either from the south-bound track or from a point near thereto attempting to climb up on his truck. His last version was: " He was in motion * * * from the south-bound track. He dropped his towels and tried to make a grap for the * * * made a grab for his seat, his handle bar, the handle of something to get on there. As he put his left foot on the running board the car came along and struck him on the left side." The witness places the car about forty feet from the intestate when he first saw him and gives it a speed, as already stated, of about twenty miles an hour. In his last version it will be noticed that this witness gives no description of

1926.] Opinion, per HISCOCK, Ch. J. [243 N. Y. 249]

how the intestate got to the point, whether on the south-bound track or near it, whence he was hurrying to climb back onto his car.

His first version is suggestive of what really happened. But independent of this, a witness who formerly had been in the employ of defendant but who had nothing to do with the operation of the car in question and at the time of the trial had ceased to be in the employ of defendant and who, therefore, was a disinterested witness, did state how the intestate got in the way of harm. This witness, one Ward, stated that the intestate was stepping backward from his automobile and in that manner came in contact with the car.

In view of the fact that this accident happened between street intersections the rule of law ordinarily would be that the trolley car had the right of way and that the obligation rested upon the intestate to regulate his movements in subordination to such right. In view of the unusual conditions caused by the snow banks on each side of the street it may be argued that the defendant was bound to exercise a degree of care and caution to the end of preventing collisions which would not ordinarily apply between street intersections and I shall assume, for the moment, that there was evidence which permitted the jury to say that it did not live up to its obligations but was guilty of negligence, and first take up the other question whether as matter of law intestate was shown to be so careless of his obligations that he must be regarded as having contributed to the accident in a manner which bars plaintiff from a right to recover.

In order to pass from his automobile to his customer's place of business it would have been necessary for intestate to cross the south-bound track upon which the car approached. The evidence, however, in my opinion does not indicate that he had reached that point in his movements. According to the evidence of plaintiff's witness we simply see him when the car was within forty feet of

him and approaching at a rate of twenty miles an hour, hurrying from a point either on or beside the south-bound track and attempting to climb upon his automobile. There is no suggestion ·in the evidence, favorable to the plaintiff, of the movements by which intestate reached that point, but the evidence first given by this same witness and also the evidence of the disinterested witness Ward indicates that the intestate was getting down backwards from his truck when he was struck by the car. It seems to me that the fair inference from all of this evidence is that the intestate took from his automobile an armful of towels to be delivered to his customer; that in getting down from his truck either because he was moving backwards or otherwise ,he failed to see the approaching trolley car until it was within a few feet of him and then when it was too late attempted to escape from his position of danger by climbing back on the truck. This would seem to be at times the view of plaintiff's counsel, for his brief states: " In the first place the deceased in the case at bar was not crossing the street * * *. He was at all times either selecting the proper towels or upon the south-bound track. It was, therefore, totally unlike a case in which the motorman had the right to assume that the pedestrian would stop before going upon the track." If this is the correct theory, that intestate backed or stepped from a position of safety upon his automobile in front of a car in plain sight, moving at the rate of twenty miles an hour and distant only a few feet, it appears to be too clear to be debatable that he was negligent. He was presumably familiar with car and track conditions at the point of the accident and knew the direction from which a car was to be expected on the track where he was struck. If he backed down upon the track in front of the car without looking he was oblivious of his duties. If he looked and saw and still placed himself in a position of danger he was, if anything, still more oblivious because then, intention took the place of inadvertence. But in another

1926.]          Opinion, per Hiscock, Ch. J.          [243 N. Y. 249]

portion of the brief plaintiff's counsel seems to change his theory and argue that decedent was crossing the track. He says " the length of time which elapsed after the truck came to a stop makes it well nigh certain that he [the decedent] had started to cross with the towels in his arms when he saw the car coming at a fast rate of speed and was not slowing up and he then dropped the  *  *  * towels and made a frantic effort to get back on the truck." This theory clearly subjects decedent to the charge of contributory negligence, because even though the street conditions might subject the defendant to additional obligations of caution in some situations we see nothing which changed the rule as between it and a foot passenger who, with free and unimpeded movements, proposed to cross one of its tracks in the middle of a block.   The rights of such a person are, of course, subordinate to the rights of the car and do not permit him to gamble with the chance of accidents by going in front of a car approaching as this car was.   Plaintiff's counsel seems almost to concede this by his attempt in the passage first quoted from his brief to differentiate this from an ordinary crossing case of a foot passenger.

For the purposes of discussion we assumed for the moment that there was evidence upon which might be based the conclusion that defendant was guilty of negligence.   When we consider that question, however, and substitute final conclusion for preliminary assumption, we do not think that there was such evidence.   Questions of negligence and contributory negligence in such cases as this frequently run closely together and the same facts are decisive of each.   That is true of this case. The insistent claims by plaintiff of negligence are predicated on the facts that defendant's car was running at a rapid rate of speed and that no gong was sounded. Under all of the conditions we do not regard either of these facts or both of them together as establishing negligence. Daylight made the car easily if not inevitably visible

to intestate if he looked before going upon the track and, therefore, a gong was not necessary. The car was going at the rate of twenty miles an hour but this was between street intersections in violation of no ordinance and left the car under ready and quick control, for the evidence is that it was stopped within its own length after the accident. While as has been suggested it may have been incumbent upon the defendant to use extra precautions to guard against collisions in certain conditions, as for instance where an automobile was forced by street conditions into an unusual or awkward position, there was no rule which called upon the motorman to anticipate unusual or careless movements upon the part of a foot passenger who was in full control of his movements until something happened which reasonably led to such anticipation. As we have already pointed out we do not think that the conduct of decedent furnished any such warning until it was too late for the motorman to avert the accident. Whether he inadvertently backed or stepped from his automobile upon the track in the face of the approaching car or stepped upon the track for the purpose of crossing it when the car was practically upon him, his conduct was not to have been anticipated in advance by the motorman and there is no suggestion that the latter did not do everything that he could to bring his car to a stop when the signal of danger was given by the impending accident.

We think that at least one error was committed by the trial justice in refusing to charge as requested by the defendant, but the view which we have taken of the merits of the case makes it unnecessary for us to consider that question.

The judgments should be reversed and the complaint dismissed, with costs in all courts.

POUND, McLAUGHLIN, CRANE and LEHMAN, JJ., concur; CARDOZO, J., concurs on second ground stated in opinion; ANDREWS, J., absent.

Judgment accordingly.